Dear Mr. Theriot:
You have requested an opinion of the Attorney General regarding employee memberships in two local health and fitness centers. You state that approximately one year ago, in an effort to implement a wellness and fitness program for your employees, you contracted with two area fitness centers. Under the terms of these agreements, you paid two annual group membership fees, the combined total of which was $1,900.00. In return, your staff of twenty five employees are entitled to use these facilities for personal fitness training. You specifically ask whether it is legally permissible to expend moneys from the Clerk's Salary Fund (Fund) for these membership fees.
In support of your position that the expenditure is appropriate, you direct our attention to three Attorney General Opinions relating to this issue, to wit: Opinion Nos. 89-112, 95-122 and 98-385. We believe that a summary of these opinions will be helpful in the analysis and resolution your inquiry.
Opinion No. 89-112 addressed the implementation by the Caddo Parish Sheriff's Office of an incentive pay plan providing modest additional compensation to employees to be used for firearms proficiency, vehicle safety, continuing education and physical fitness. At issue was whether the use of public funds to finance the plan constituted a violation of Article VII, Section 14 of the Louisiana Constitution of 1974. This provision seeks to prevent the gratuitous alienation of public funds and property. It requires that the transfer and/or expenditure of public funds be for a valid public purpose (i.e., based on the presence of a legal authority for the transfer), and that it provides a public benefit, the value of which is proportionate to the amount of the expenditure.
In concluding that the incentive pay plan was constitutionally permissible, the author opined that increased employee physical fitness promotes the protection of the lives of the deputies and the public they serve, as well as lowers costs due to improved health and job performance. Accordingly, a public purpose is rationally served, a public benefit is realized and the value of the benefit received is commensurate to the modest amount of funds expended.
Opinion No. 95-122 concerned whether or not health club membership fees could be paid for employees of the Abbeville Police Department from public funds appropriated for law enforcement purposes. Citing the reasoning in Opinion No. 89-112, we concluded that the payment of such fees for the promotion of physical fitness constitutes a law enforcement purpose which meets the constitutional standards required by Article VII, Section 14.
Opinion No. 98-385 addressed the issue of funding a wellness and fitness program for employees of the Lake Charles Harbor and Terminal District (District). The District, recognizing the advantages of maintaining a sound workforce, contracted with a local hospital to screen its employees and devise an Employee Assistance Program (EAP) to minimize and/or to eliminate potential health problems. The EAP eventually implemented also fulfilled one of the conditions of employment contained in the District's Employee Handbook.
An integral component of the EAP is an employee Wellness and Fitness Program (WFP). The WFP required participating employees to attend regularly scheduled workout sessions at a local YMCA. Trained YMCA staff assisted employees in developing a workout profile which was tailored to meet individual needs and goals. The District paid the monthly dues of those employees adhering to the conditions of the WFP. Employees who did not participate and/or conform to the profile developed for them did not receive this benefit.
The opinion examined the duties and power of the District and concluded that the performance of same required a physically capable workforce. Applying the conditions imposed by Article VII, Section 14, we found the implementation of the WFP to be within the authority of the District. Further, we opined that the expenditure of District funds for the WFP constituted a public purpose, the benefits of which included reduced absenteeism and healthcare costs, and increased worker productivity. Finally, we concluded that the benefits received by the District were reasonably proportionate to the amount expended for the WFP.
As can be gleaned from the above opinions, the legitimacy of the individual programs and/or expenditures in question were all examined in light of Article VII, Section 14. Also, no distinction was made between employees who were eligible for participation vis-a-vis the demands of their specific jobs. In other words, employees were deemed eligible regardless of whether their job descriptions required their responsibilities to be performed in a sedentary fashion or, conversely, with varying degrees of physical exertion. Finally, the expenditures and/or programs were found to be constitutionally acceptable despite the absence of statutory language specifically authorizing the fitness programs in question. With these observations in mind, we turn to the resolution of the issue you have presented.
As noted in the above opinions, the expenditure of public funds for a wellness and fitness program for clerk of court personnel must be examined in light of our Constitution. The constitutional norm for the lawful expenditure or public funds and property is found in Article VII, Section 14. Paragraph (A) generally prohibits the loan, pledge or donation of public funds and/or property. Exceptions to this prohibition are found in Paragraph (B), all of which appear to be inapplicable to the issue at hand.
Paragraph (C) of Section 14 authorizes the State and its political subdivisions (e.g., the Clerk) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations and/or individuals. This office has consistently opined that, for an expenditure of public funds to be legally permissible, it must be pursuant to a valid legal obligation (i.e., authority), for a public purpose, resulting in a public benefit proportionate to its cost. Attorney General Opinion Nos. 98-410, 98-385, 98-378, 97-471-A, 96-115, 93-787, 92-722 and 90-651.
Unfortunately, all public responsibilities and legal duties are not carefully crafted into our laws. We have found this to be especially true in the area of compensation and related benefits for state and local public employees. For example, in Opinion No. 90-249 we concluded that the waiver and/or reduction of tuition fees for employees, faculty, staff and dependents by state colleges and universities constituted traditional and nationally well-established forms of non-cash compensation or benefits of employment. As such, they were not prohibited by Article VII, Section 14.
Opinion No. 94-72, citing 90-249, further held that discounts on services provided by a hospital service district to its employees did not violate Article VII, Section 14. The author opined that the provision of service discounts to employees could be construed as part of the employment contract entered into between the hospital service district and its employees. It should be noted that, neither the tuition waivers, nor the discounts on services were specifically authorized by statute.
The Office of the Parish Clerk of Court is constitutionally established by Article V, Section 28 of the 1974 Louisiana Constitution:
 § 28. Clerks of Courts
 Section 28. (A). Powers and Duties; Deputies. In each parish a clerk of the district court shall be elected for a term of four years. He shall be ex officio notary public and parish recorder of conveyances, mortgages, and other acts and shall have other duties and powers provided by law. The clerk may appoint deputies with duties and powers provided by law and with the approval of the district judges, he may appoint minute clerks with duties and powers provided by law.
 (B). Office hours. The legislature shall establish uniform statewide office hours for clerks of the district courts.
R.S. 13:783 provides with respect to the clerk's employees and expenses, in pertinent part, as follows:
 § 783. Expenses of clerks office.
 A. The clerk shall employ all necessary deputies and assistants, fix and pay their salaries, and defray all expenses out of the clerk's salary fund.
As can be gleaned from the above, the clerk of court is empowered to hire necessary deputies and employees, and fix and pay salaries and expenses out of the Fund. Inherent therein is the authority to provide employment-related benefits which are not prohibited by constitutional and statutory laws, case law and/or public policy. Examples of such benefits include moving expenses, holidays, vacations, sick leave, health and accident insurance, pension plans, uniforms, free parking, discounts on services and products, use of publicly-owned automobiles and the waiver of tuition. Obviously, these benefits must be properly administered so as not to constitute a purely gratuitous alienation of public funds or property in violation of Article VII, Section 14.
We believe that a properly administered fitness program for public employees constitutes a public purpose, the advantages of which include significant health benefits, the prevention of illnesses and injuries and, in the event thereof, a shorter recovery time. Such programs appear to reduce stress and improve attention spans for increased worker productivity. They also reduce absenteeism and health care costs. All of these benefits result in the enhancement of the Clerk's ability to carry out his constitutional and statutory duties within and for the Judicial Branch of state government, as well as the general public.
We find support for the above from both public and private sector workforces. We have been advised that employees of the Federal government receive fitness club memberships as a benefit of their employment. Further, one of the State's health maintenance organizations paid membership dues for public and private employees who participated in structured fitness programs.
As previously noted, a publicly funded wellness and fitness program must, to be constitutionally sanctioned, provide public benefits reasonably proportionate to its cost. The attainment of these benefits is better insured through the implementation of certain guidelines which have been recognized as standard throughout the health care and fitness industries. The following represents examples of those recommended:
 (1) The fitness center provider(s) should have the staff capability to evaluate employee participants and formulate exercise and diet protocols tailored to individual needs and goals;
 (2) The fitness center provider(s) should have the equipment necessary to measure weight, body fat content, heart rate and blood pressure;
 (3) If possible, employees should be screened for potential health risks by appropriate medical personnel prior to participation in a fitness program;
 (4) Participation should only be offered to employees who actually implement their individually tailored exercise routine through the use of the facilities of the fitness center for a required minimum average number of hours per week;
 (5) The fitness center provider(s) should maintain records to verify that the employee (a) has implemented his or her exercise routine and (b) uses the facilities the required minimum average number of hours per week;
 (6) Should an employee fail to adhere to the conditions set forth in Paragraph (4), his or her participation in the program should be terminated;
 (7) The cost of the program, including membership dues, shall be reasonably moderate so as not to be disproportionate to the value of the benefits received; and
 (8) The program should be formally adopted pursuant to a resolution or ordinance and/or its inclusion in an employer/employee personnel manual or handbook.
We have been advised by representatives of your office that you do not have the capability of contracting with a local hospital for employee screening as was done by the Lake Charles Harbor and Terminal District (Opinion No. 98-385, supra.). To deny you and your employees the benefits derived from a qualified fitness program solely on this basis would, in our opinion, be unjust and inequitable. We recognize that not all public employers may have the financial resources and/or be in reasonably close proximity to a hospital to make such arrangements.
However, the health center providers selected should, at a minimum, have staff capability to evaluate participants, develop individual diet and fitness programs and effectively monitor employee compliance therewith. Information furnished us by your office indicates that the two providers you have selected possess these capabilities.
Having reviewed the benefits to be received by your office from the implementation of a wellness and fitness program, and examples of guidelines to better insure the receipt of said benefits, we turn now to the final criterion — that the value placed on these benefits is reasonably proportionate to the cost represented by the membership dues.
Clearly, one can not put a specific price on the value of the benefits received by your office as a result of employee participation in a structured fitness program. While the benefits discussed above are somewhat intangible, they are nevertheless substantive and valuable to the effective operation of your office. We therefore conclude that the modest amount of $1,900.00 for annual group memberships in two facilities is not so disproportionate to the public benefits realized so as to render the expenditure unreasonable and/or unconstitutional. The average cost per employee appears to be significantly lower than the cost customarily charged for individual memberships.
Finally, we are of the opinion that the guidelines enumerated above can be used by other public employers in developing wellness and fitness programs for their employees. However, extreme care should be taken to ensure that the program developed is structured, implemented and monitored to avoid abuse and a possible violation of Article VII, Section 14.
In summary, a clerk of court may establish a wellness and fitness program for his employees, and pay the group memberships for same out of the Clerk's Salary Fund. The program should be made available to all employees and structured in accordance with the guidelines enumerated above. Compliance with these guidelines should be effected as soon as is reasonably possible.
In the absence of abuse, we believe the program constitutes a public purpose resulting in bona fide benefits to the Clerk's office. We further opine that the value of the benefits received is reasonably proportionate to the cost represented by the membership dues.
The opinion rendered herein is limited to the validity of the wellness and fitness program of the Vermilion Parish Clerk of Court. The validity of similar programs proposed by other public employers must be analyzed in light of the components specific thereto.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III/dra
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General